## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**CHEDRICK STARKS,**
    **Plaintiff**

**VERSUS**

**ADVANTAGE STAFFING, LLC,
ET AL.**
     **Defendants**

**CIVIL ACTION**

**NO. 14-1592**

**SECTION: "E" (5)**

## ORDER AND REASONS

Before the Court is the "Motion for Summary Judgment on the Issue of Jones Act Seaman's Status" by defendants Advantage Technical Resourcing, Inc., Advantage Human Resourcing, Inc., Archer Daniels Midland Company ("ADM") and American River Transportation Co. (collectively "defendants").[1] Defendants contend that plaintiff Chedrick Starks ("Starks") does not qualify as a seaman under the Jones Act. Starks has filed a memoranda in opposition to defendants' motion.[2] The Court granted defendants leave to file a supplemental memorandum after the submission date passed and granted plaintiff leave to respond.[3] For the reasons stated below, the Court denies defendants' motion.

## BACKGROUND

This is a maritime personal injury case. Plaintiff Starks was a contract laborer

---

[1] R. Doc. 59.
[2] R. Doc. 61.
[3] R. Docs. 70, 71, & 75.

employed by defendants[4] at an ADM barge unloading facility in Reserve, Louisiana.[5] The facility appears to have been commonly referred to as a "loading rig."[6] Starks and a co-worker cleared remnants of grain from the hoppers of barges being run through a conveyor system alongside the loading rig.[7]

A large excavator would clear a substantial amount of the grain from a given barge's hopper as the barge was run on the conveyor.[8] Starks and his co-worker would then clear grain remnants using a bobcat that would be lowered into the given barge by a lift.[9] One worker, located on the loading rig, would operate the bobcat lift and guide a ladder into the barge.[10] The other worker would descend the ladder into the barge and operate the bobcat.[11] Starks and his co-worker took turns operating the bobcat in the barges and operating the ladder and bobcat lift from the loading rig.[12] On November 7, 2013, Starks suffered his alleged injury while operating the ladder and bobcat lift from

---

[4] The parties apparently dispute which of defendants may be consider as Starks' employer; however, the parties do not contend that the dispute is pertinent to the seaman status inquiry at issue in the instant motion. *See* R. Docs. 59-7 & 62-2. For the purposes of this order and reasons only, the Court refers to "defendants" generally as Starks' employer.

[5] *See* R. Docs. 59-7 & 62-2; *see also* R. Doc. 59-1 at 4; Transcript of the Testimony of Chedrick Reyon Starks at 95–96, Jan. 5. 2016. The Court notes that many of the basic background facts discussed in defendants' initial memoranda in support of summary judgment were not supported by citations to the record. *See* R. Doc. 59-1 at 3–4. Defendants first filed a motion for summary judgment on the seaman status on March 8, 2016; however, the Court ordered defendants to refile after concluding that defendants failed to properly cite to competent summary judgment evidence in accordance with Federal Rule of Civil Procedure 56(e). *See* R. Docs. 57 & 58. Neither defendants' refiled brief nor their supplemental memorandum clearly support the background facts of this case with citations to the record. *See* R. Doc. 59 & 71. The Court has primarily relied on a review of Starks' deposition in its determination that the following background facts, asserted by the parties without citation to the record, are not in dispute.

[6] *Id.*

[7] *See* R. Docs. 59-7, 62-2, & 71-2; *see also* R. Doc. 59-1 at 4; Transcript of the Testimony of Chedrick Reyon Starks at 107–21, Jan. 5, 2016.

[8] *Id.*

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] *Id.* It appears on the record that Starks would operate the bobcat for three consecutive barges running through the conveyor system and then operate the bobcat lift for the next three barges, and so on. *See* Transcript of the Testimony of Chedrick Reyon Starks at 114, Jan. 5, 2016; R. Doc. 59-7 at 2.

the loading rig.[13] According to Starks, an unidentified object struck and broke his arm.[14]

Starks filed this suit on July 9, 2014, asserting claims under the Jones Act and tort claims under general maritime law.[15] On March 14, 2016, defendants filed the instant motion for summary judgment, contending that Starks may not seek relief under the Jones Act, because he does not qualify as a seaman.[16]

Defendants essentially put forward three arguments in support of their contention that Starks does not qualify as a seaman for the purposes of the Jones Act. The first argument is that defendants' barges[17] on which Starks worked were not "in navigation," because they were always docked while Starks worked on or around them.[18] The second argument is that Starks' connection to defendants' barges was not sufficiently substantial in nature, because Starks' work did not expose him to the "perils of the sea."[19] The third argument is that Starks' connection to defendants' barges was not sufficiently substantial in duration, because Starks spent less than 30% of his work time on defendants' barges.[20] Defendants' memorandum in support of their motion for summary judgment cited to barge records covering roughly the month leading up to Starks' alleged injury, contending the records clearly indicate that Starks did not spend 30% of his work time aboard defendants' barges. Defendants' supplemental memorandum contains barge records and timesheets that defendants contend reflect all of Starks' time spent working on

---

[13] *See id.*; *see also* Transcript of the Testimony of Chedrick Reyon Starks at 143–44, Jan. 5, 2016.
[14] *Id.*
[15] R. Doc. 1.
[16] R. Doc. 59.
[17] Plaintiff refers to "defendants' barges" as those barges "owned, operated and/or manage[d] by Defendants American River Transportation Co.. and/or Archer Daniels Midland Company." *See* R. Doc. 75.
[18] R. Doc. 59-1 at 4–5 (citing *Harbor Tug and Barge Co. v. Papai*, 520 U.S. 548, 555, 117 S.Ct. 1535, 137 L.Ed. 2d 800 (1997); *Richard v. Mike Hooks, Inc.*, No. 2001-C-0145, (La. 12/14/01); 799 So.2d 462).
[19] *Id.* at 5–10 (citing *Chandris, Inc. v. Latsis*, 515 U.S. 347, 368–71, 115 S.Ct. 2172, 132 L.Ed.2d 314 (1995)).
[20] *Id.* at 10–12.

defendants' barges.[21] Defendants contend these records decisively demonstrate that Starks spent far less than 30% of his time working on defendants' barges.[22]

Starks opposes each of defendants' three arguments. As to defendants' first argument, Starks argues that defendants' barges were clearly "in navigation" for the purposes of the Jones Act, because they were "used, or capable of being used" for maritime transportation.[23] Addressing defendants' second argument, Starks argues that Fifth Circuit precedent does not require that a plaintiff actually go out on navigable waters to qualify as a seaman.[24] Instead, Starks contends that the time he spent a significant amount of time working aboard the barges and that is sufficient to establish a substantial connection in nature.[25] Finally, Starks argues that defendants have not established that Starks spent less than 30% of his work time on defendants' barges.[26] Responding to defendants' initially supplied evidence and calculation of Starks' work time, Starks contends defendants improperly used a "snapshot" of Starks' work time, which does not adequately depict Starks' "enduring relationship" with defendants' barges.[27] And Starks challenges the admissibility and credibility of the supplemental barge records and timesheets supplied by defendants after the motion submission date, noting that they are not accompanied by an affidavit or other evidence that indicates how the records were compiled and whether the records accurately and comprehensively show all the work Starks performed on defendants' barges.

---

[21] *See* R. Doc. 71 at 2–3.
[22] *Id.*
[23] R. Doc. 62 at 4–5.
[24] *Id.* at 7–8 (citing *In re Endeavor Marine, Inc.*, 234 F.3d 287, 291–92 (5th Cir.2000) (per curiam)).
[25] *Id.*; *see also* R. Doc. 75 at 9.
[26] R. Doc. 62 at 5–6 (citing *Chandris*, 515 U.S. at 363); *see also* R. Doc. 75 at 7–8..
[27] *Id.*

## ANALYSIS

### I. Seaman Status

The Jones Act provides that "[a] seaman injured in the course of employment . . . may elect to bring a civil action at law, with the right of trial by jury, against the employer."[28] Defendants argue Starks cannot recover under the Jones Act because he is not a seaman. The Act does not define "seaman"; instead, the task has been left to the courts.[29] The inquiry is whether the injured plaintiff is a "master or member of a crew of any vessel."[30]

### A. Standard of Law

When considering a motion for summary judgment, the Court must view the evidence and any inferences drawn from the evidence in the light most favorable to the non-movant to determine whether there is a genuine issue of material fact and whether the movant is entitled to summary judgment as a matter of law.[31] Whether an injured worker is a seaman under the Jones Act is a mixed question of law and fact.[32] Because statutory terms are at issue, their interpretation is a question of law, and it is the Court's duty to define the appropriate standard.[33]

"The Jones Act is remedial legislation and as such should be liberally construed in favor of injured seamen."[34] Nevertheless, summary judgment is proper where the underlying facts are undisputed and the record reveals no evidence from which

---

[28] 46 U.S.C. § 30104.

[29] *See In re Endeavor Marine*, 234 F.3d at 290; *Naquin v. Elevating Boats, L.L.C.*, 744 F.3d 927, 932 (5th Cir. 2014); *St. Romain v. Indus. Fabrication and Repair Serv., Inc.*, 203 F.3d 376, 378 (5th Cir. 2000).

[30] *See Naquin*, 744 F.3d at 932; *Roberts v. Cardinal Serv., Inc.*, 266 F.3d 368, 374 (5th Cir. 2001).

[31] *See Buras v. Commercial Testing & Eng'g Co.*, 736 F.2d 307, 309 (5th Cir. 1984).

[32] *See St. Romain*, 203 F.3d at 378.

[33] *Chandris*, 515 U.S. at 369.

[34] *Guidry v. S. La. Contractors, Inc.*, 614 F.2d 447, 455 (5th Cir.1980).

reasonable persons might draw conflicting inferences about whether the claimant is a Jones Act seaman.[35] If reasonable persons could draw conflicting inferences, it is a question for the jury and summary judgment must be denied.[36] "[T]he issue of seaman status is ordinarily a jury question, even when the claim to seaman status is marginal."[37] Thus, summary judgment on seaman status in Jones Act cases is rarely proper.[38]

Finally, the Court notes that district courts have no obligation to survey the entire record in search of evidence to support a party's position. *De la O v. Hous. Auth. Of City of El Paso, Tex.*, 417 F.3d 495, 501 (5th Cir. 2005).

*B. Discussion*

Despite some guidance from Congress and the courts, drawing a distinction between seamen and non-seamen has proved difficult. In *Chandris, Inc. v. Latsis,* the Supreme Court explained that, to qualify as a Jones Act seaman, a maritime employee must have a "substantial employment-related connection to a vessel *in navigation.*"[39] The Court developed a two-pronged analysis to guide the determination of seaman status.[40] First, the employee's duties must "contribut[e] to the function of the vessel or to the accomplishment of its mission."[41] Second, the employee "must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature."[42]

---

[35] *Id.*; *see also Ellender v. Kiva Const. & Eng'g, Inc.*, 909 F.2d 803, 805–06 (5th Cir. 1990); *Barrios v. Engine & Gas Compressor Serv.*, Inc., 669 F.2d 350, 352 (5th Cir.1982).
[36] *See Buras*, 736 F.2d at 309; *Chandris*, 515 U.S. at 369, 115 S.Ct. 2172.
[37] *White v. Valley Line Co.*, 736 F.2d 304, 305 (5th Cir. 1984).
[38] *See Bouvier v. Krenz*, 702 F.2d 89, 90 (5th Cir. 1983).
[39] *Chandris*, 515 U.S. at 356 (emphasis in original).
[40] *See id.* at 368–69.
[41] *Id.* at 368 (quoting *McDermott Intern., Inc. v. Wilander*, 498 U.S. 337, 355, 111 S.Ct. 807, 112 L.Ed.2d 866 (1991)).
[42] *Id.*

Defendants dispute—without stated reason—that Starks meets the first prong of the *Chandris* test, stating only that they leave the first prong of *Chandris* unaddressed, because summary judgment is warranted on other grounds.[43] Because defendants do not substantively address the first prong of *Chandris,* the Court leaves the topic unaddressed.[44] At least for the purposes of this motion for summary judgment, the Court's determination of whether Starks may qualify as a seaman under the Jones Act turns on whether he has a connection to a vessel or group of vessels: 1) in navigation; 2) that is substantial in nature; and 3) that is substantial in duration.

### 1. Vessel in Navigation

Defendants' first argument is that the barges at issue in this case were not "in navigation," because they have no crew, engines for propulsion, steering, or other features associated with vessels and because Starks was not involved with the barges when they actually were in navigation.[45] Defendants cite to no legal authority supporting their argument that barges like the ones in question here are not vessels in navigation.[46] In *Stewart v. Dutra Const. Co.*, the Supreme Court examined pertinent statutory provisions to determine the meaning of "vessel" for the purposes of the Jones Act.[47] The Court made clear that, in order for a watercraft to be considered a "vessel" for the purposes of the Jones Act, the watercraft need only "be 'used, or capable of being used, as a means of

---

[43] *See* R. Doc. 59-1 at 3 n.1.

[44] Without moving for summary judgment on the issue, Starks does address the first prong of *Chandris*, noting that Starks "need only show that [he] does the ship's work." R. Doc. 62 at 2–3 (citing *In re Endeavor Marine, Inc.*, 234 F.3d at 290). The Court notes its skepticism as to defendants' unelucidated contention that Starks' work clearing out grain from a fleet of grain-carrying barges does not constitute "the ship's work."

[45] R. Doc. 59-1 at 4–5.

[46] *See id.*

[47] 543 U.S. 481, 488–90, 125 S.Ct. 1118, 160 L.Ed.2d 932 (2005).

transportation on water.'"[48]

The Court in *Stewart* emphasized that it does not matter whether the watercraft in question was in motion or stationary at the time of the plaintiff's alleged injury.[49] The Court cited to two precedential cases treating barges or watercraft comparable to barges as "vessels."[50] Only where a watercraft has "been withdrawn from the water for extended periods of time" might it be possible that a watercraft once capable of being used for transportation on water could lose its status as a vessel.[51] More recently, the Court in *Lozman v. City of Riviera Beach, Fla.* emphasized that courts should consider whether the watercraft in question was "designed to a practical degree for 'transportation on water.'"[52]

Here, the parties do not apparently dispute that the barges in question were regularly put to use transporting grain on navigable waters. The fact that the barges were being run through the loading rig's conveyor system at the time of Starks' alleged injury is immaterial to the determination of whether the barges are vessels "in navigation" for the purposes of the Jones Act. Starks, of course, must still establish that he had a connection to an identifiable fleet of the grain barges that was substantial in both nature and duration. The Court may conclude as a matter of law, however, that the barges at question in this case were vessels in navigation.[53]

---

[48] *Id.* at 496.
[49] *Id.* at 496.
[50] *See id.* at 492, 492 n.6 (citing, *e.g.*, *Norton v. Warner Co.*, 321 U.S. 565, 64 S.Ct. 747, 88 L.Ed. 931 (1944) and *Jones & Laughlin Steel Corp. v. Pfeifer*, 462 U.S. 523, 528–30, 103 S.Ct. 2541, 76 L.Ed.2d 768 (1983)).
[51] *See id.* at 496.
[52] *Lozman v. City of Riviera Beach, Fla.*, ____ U.S. ____, 133 S.Ct. 735, 742–43, 184 L.Ed.2d 604 (2013).
[53] The Court notes a line of Fifth Circuit precedent involving grain facilities apparently like the "loading rig" in this case. *See generally Waguespack v. Aetna Life & Cas. Co*, 795 F.2d 523 (5th Cir. 1986); *Jones v. Miss. River Grain Elevator, Co.*, 703 F.2d 108 (5th Cir. 1983). A review of these cases indicates that the respective plaintiffs were unable to establish a substantial connection to the grain barges coming in from the river, and instead attempted to argue that the loading rig-like facilities were themselves vessels. *See id.* Because

*2. Nature*

Defendants next argue that Starks' connection to the grain barges at issue in this case was not sufficiently substantial in nature. Specifically, defendants argue that Starks' work aboard the grain barges in question did not expose him to the "perils of the sea."[54] Defendants' argument hinges primarily on the Supreme Court's 1997 decision in *Harbor Tug and Barge Co. v. Papai* and a variety of non-binding authority.[55] In *Harbor Tug*, the Court noted that the "nature" inquiry "must concentrate on whether the employee's duties take him to sea."[56] Defendants contend Fifth Circuit precedent created in the wake of *Harbor Tug* may not require that a plaintiff actually go to sea; however, has reaffirmed that a plaintiff must be regularly exposed "to the special hazards and disadvantages to which they who go down to sea in ships are subjected."[57]

Defendants (and Starks) fail to address the Fifth Circuit's 2014 decision in *Naquin v. Elevating Boats, L.L.C.*. The Fifth Circuit in *Naquin* expressly held that a plaintiff need not literally work on the open sea in order to qualify as a seaman.[58] The vessel repairman plaintiff in *Naquin*, "ordinarily" serviced vessels while they were anchored or docked and only occasionally serviced vessels while they were moved within a canal or on open water.[59] Addressing the defendant's argument that the plaintiff performed "classic land-based harbor worker duties" and was not sufficiently exposed to the perils of the sea, the *Naquin* court stated that "courts have consistently rejected the categorical assertion that

---

Starks does not apparently contend that the loading rig itself was a vessel, but rather argues that he had a substantial connection to defendants' grain barges, cases such as *Waguespack* and *Jones* are inapposite in this case.

[54] R. Doc. 71 at 3–4.
[55] *See* R. Doc. 59-1 at 5–10.
[56] 520 U.S. 548, 555, 117 S.Ct. 1535, 137 L.Ed. 2d 800 (1997).
[57] R. Doc. 71 at 4 (quoting *In re Endeavor Marine*, 234 F.3d at 292.
[58] *Naquin*, 744 F.3d at 934–35; *see also In re Endeavor Marine, Inc.*, 234 F.3d at 289.
[59] 744 F.3d. at 930–31.

workers who spend their time aboard vessels near the shore do not face maritime perils."[60]

The *Naquin* court concluded that it did not matter that the plaintiff in question "was rarely required to spend the night aboard a vessel, that the vessels he worked upon were ordinarily docked, and that he almost never ventured beyond the immediate canal area or onto the open sea."[61] The Court noted that certain "traditional longshoreman work . . . may qualify for seaman status" where the plaintiff can establish "the requisite employment-related connection to the vessel."[62] The *Naquin* court clearly indicated that the key inquiry is whether the worker is "exposed to the perils of a maritime work environment."[63]

Here, the Court concludes, in light of *Naquin*, that Starks has adequately established that his work involved a substantial connection in nature to the barges in question. It does appear that Starks worked aboard the barges only while they were connected to the loading rig's conveyor system; however, the Court finds the activity of clearing grain from inside a barge's hopper to be sufficiently analogous to the sort of work performed by the plaintiff in *Naquin*. Starks' work inside the grain barges exposed him to the perils of a maritime work environment. The Court therefore concludes that Starks' connection to the barges in question could be sufficiently substantial in nature to satisfy the test laid out in *Chandris*.

---

[60] 744 F.3d. at 934.

[61] *Id.*

[62] *Id.* at 932 n.12 (quoting *In re Endeavor Marine Inc.*, 234 F.3d at 291).

[63] 744 F.3d. at 934 (citing *Stewart*, 543 U.S. at 497). The Court acknowledges the dissent in *Naquin*, which essentially supports and mirrors defendants' argument and cites with favor to one of the non-binding cases cited to by defendants. *See id.* at 941–44 (Jones, J. dissenting) (citing *Richard v. Mike Hooks, Inc.*, 2001-C-0145 (La. 10/16/01); 799 So.2d 462). The dissent, which was not cited to or discussed by defendants, does not provide an adequate basis for the Court to stray from the guidance in *In re Endeavor Marine* and *Naquin*.

*3. Duration*

Even though Starks can establish that the activity of clearing grain from inside a barge's hopper constitutes a sufficiently substantial connection in nature to the identified barges, Starks still must establish that such a connection was also substantial in duration. Defendants initially cited to just over a month's worth of barge records to put forward a calculation of Starks' work time indicating that Starks worked in or around defendants' barges far less than 30%.[64] In opposition, Starks contended that the cited records did not provide an adequate basis for rebutting Starks' own testimony that he had worked clearing grain from barges for two years and spent roughly "80 to 85 percent" of his time clearing grain from barges in the control of defendants.[65] After the submission date for the motion, defendants sought leave to file a supplemental memoranda that supplies a revised calculation of Starks' work time based on time sheets and barge records that defendants contend span the full extent of Starks' time spent working on the loading rig clearing grain.[66] Starks challenges the admissibility of the supplemental records, noting that defendants provide no affidavit or other evidence indicating how the records were compiled or whether they actually reflect all of the time Starks spent working aboard defendants' barges.[67]

With regard to the substantial duration requirement, *Chandris* recognized the Fifth Circuit's "rule of thumb" for the ordinary case that, generally, a "worker who spends less than about 30 percent of his time in the service of a vessel in navigation should not

---

[64] *See* R. Doc. 59-1 at 10–12.
[65] *See* R. Doc. 62 at 6.
[66] *See* R. Doc. 71.
[67] *See* R. Doc. 75.

qualify as a seaman under the Jones Act."[68] The 30 percent figure, however, "serves as no more than a guideline . . . and departure from it will certainly be justified in appropriate cases."[69] The Fifth Circuit has further explained that "[t]he 30 percent floor does not change when an 'identifiable group' of vessels in navigation is at issue, rather than just one vessel."[70]

The Court in *Chandris* also stated that "[i]n evaluating the employment-related connection of a maritime worker to a vessel in navigation, courts should not employ 'a snapshot test for seaman status, inspecting only the situation as it exists at the instant of injury; a more enduring relationship is contemplated in the jurisprudence."[71] The Court in *Chandris* quoted with favor the Fifth Circuit's decision in *Barrett v. Chevron, U.S.A., Inc.*, which lays out the general rule that the duration prong is typically determined "'in the context of [plaintiff's] *entire* employment' with his current employer."[72] The Fifth Circuit in *Wilcox v. Wild Well Control* recently reaffirmed the general rule laid out in *Barrett* and quoted favorably in *Chandris*.[73] An exception to the rule in *Barrett* is appropriate only where the plaintiff's work assignment was substantially changed at some point during the plaintiff's employment.[74]

Starks' reply to defendants' supplemental memorandum indicates that the parties do not dispute that Starks spent from August 20, 2013, until the time of his alleged injury on November 7, 2013, clearing grain barges for defendants.[75] Furthermore, the parties do

---

[68] *Chandris*, 515 U.S. at 371.
[69] *Id.*
[70] *Roberts v. Cardinal Services, Inc.* 266 F.3d 368, 375 (5th Cir. 2001).
[71] *Chandris*, 515 U.S. at 363.
[72] *Chandris*, 515 U.S. at 366 (quoting *Barrett v. Chevron U.S.A., Inc.*, 781 F.2d 1067, 1075 (5th Cir. 1986) (en banc)).
[73] *Wilcox v. Wild Well Control, Inc.*, 794 F.3d. 531, 536–37 (5th Cir. 2015).
[74] *Id.* (citing *Barrett v. Chevron U.S.A., Inc.*, 781 F.2d 1067, 1075 (5th Cir. 1986) (en banc)).
[75] *See* R. Doc. 71 at 2 & 75 at 7.

not apparently dispute the amount of hours Starks spent clearing barges generally.[76] Beyond that, the Court concludes there is a genuine issue of material fact regarding how much time Starks spent working aboard defendants' barges.

The Court does not reject the possibility that the supplemental barge records provided by defendants *could* accurately reflect that Starks spent far less than 30% of his time aboard defendants' barges. However, the Court agrees with Starks' argument that the records, as submitted, do not decisively settle how much time Starks spent aboard the barges. There is no evidence in the record clearly indicating who compiled the barge records or whether the records comprehensively reflect the amount of time Starks spent working aboard defendants' barges. The Court notes further that defendants—likely in control of the barge records from the start of this litigation—have come forward with this possibly comprehensive evidence only after the motion deadline in this case passed and barely one month before the scheduled trial date. Indeed, it appears that defendants could have presented this evidence to Starks and established its authenticity and comprehensiveness months, if not years ago. Without ruling on the admissibility of the barge records at trial, the Court concludes that the records do not constitute sufficient evidence for the Court to conclude, on a motion for summary judgment, that Starks spent less than 30% of his time working aboard defendants' barges.

Starks stated in his deposition that he spent roughly 80 to 85 percent of his time working on grain barges under the control of defendant ADM.[77] Defendants argue that Starks' statements about which barges he worked on are based on unreliable and

---

[76] *Id.*

[77] Transcript of the Testimony of Chedrick Reyon Starks at 260, Jan. 5, 2016.

inadmissible hearsay, because his only basis for knowing how to identify barges was information provided to him by his foreman.[78] Defendants do not elucidate further their hearsay argument, and a review of the cited portions of Starks' deposition transcript does not clearly support the conclusion that Starks' statements about the amount of time he spent working on defendants' barges would be entirely inadmissible evidence. Instead, defendants' attack on Starks' testimony appears to center more on the credibility of Starks' statement about which barges he worked on. That attack may be put before a jury, but may not be considered by a court on a motion for summary judgment.

As such, the Court concludes that there is a genuine dispute of material fact as to whether Starks spent roughly 30% of his time working aboard defendants' barges.

## CONCLUSION

Perhaps in part because of defendants' failure to come forward with their evidence earlier, the Court concludes that defendants are not entitled to summary judgment on the issue of Starks' Jones Act seaman status. The determination of a plaintiff's seaman status is typically a fact-intensive question for the jury. This is true even in marginal cases. In this case, defendants have not made a sufficient showing that the factual record is settled such that the Court could determine that Starks was not a Jones Act seaman as a matter of law.[79]

---

[78] *See* R. Doc. 59-1 at 11; R. Doc. 59-2 at 13–15.

[79] The Court finds it appropriate to briefly note its disappointment with counsel for defense. Most all of defendants' arguments in this motion were made either without citation to controlling legal authority or without due discussion of legal authority apparently undermining defendants' positions. Defendants cited virtually no legal authority to support their argument that the barges in question were not vessels in navigation, despite there clearly being legal authority to discuss. *See* R. Doc. 59-1 at 4–5. Defendants, both in their initial and supplemental memorandum did not discuss the Fifth Circuit's decision in *Naquin* in making their argument that Starks' connection to the barges was not substantial in nature. *See id.* at 5–10; R. Doc. 71. Furthermore, defendants initially did not address the clearly established rule from *Barrett*—recently reaffirmed in *Wilcox*—regarding how to determine a Starks' durational connection to the barges. *See* R. doc. 59-1 at 10–12. The Court reminds counsel of their obligations under Local Rule 7.4, Louisiana

Accordingly;

**IT IS HEREBY ORDERED** that defendants' "Motion for Summary Judgment on the Issue of Jones Act Seaman's Status" is **DENIED**.[80]

**New Orleans, Louisiana, this 19th day of April, 2016.**

*Susie Morgan*

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

Code of Ethics Rules 1.1 and 3.3, and Federal Rule of Civil Procedure 11(b)(2). The Court will expect all future arguments of counsel to be based upon sound legal authority and to include appropriate citation to the factual record.

[80] R. Doc. 59. The Court further orders the Clerk of Court to mark as resolved R. Doc. 57 (defendants' initial motion for summary judgment on Starks' Jones Act seaman status, which the Court ordered to be refiled in R. Doc. 58).

15